UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
GAETANO D'ATTORE,                     :

              Plaintiff,              :      REPORT & RECOMMENDATION

          - against -                :      10 Civ. 3102 (JSR)  (MHD)

NEW YORK CITY, (CORPORATION           :
COUNSEL), NEW YORK CITY DEPARTMENT
OF CORRECTION'S COMMISSIONER Dr.      :
DORA B. SCHIRRO, (WARDEN) EVELYN
MIRABEL, (WARDEN) JUAN QUINONES,      :
(CORRECTIONAL OFFICER) MITCHELL,
SHIELD #9627 - TOUR 7:00AM -          :
3:00PM, (CORRECTIONAL OFFICER) -
LEON, SHIELD #18527 - TOUR 7:00AM     :
- 3:00PM,
                                      :
              Defendants.
----------------------------------x

**TO THE HONORABLE JED S. RAKOFF, U.S.D.J:**

     Plaintiff Gaetano D'Attore, while incarcerated in the New York
City  Department  of  Correction  (DOC)  Rikers  Island  facility,
commenced this pro se lawsuit under 42 U.S.C. § 1983. He sued the
City of New York, DOC Commissioner Dr. Dora B. Schirro, Wardens
Evelyn Mirabel and Juan Quinones[1], and correctional officers ("CO")
Katia Leon and Steven Mitchell, alleging that defendants had
violated his 14th Amendment rights because of unsanitary and

-------------------

     [1] Although plaintiff spells these defendants' names as
"Schriro," "Mirabal" and "Quinonez," defendants spell them as we
have stated here.

1

otherwise inadequate conditions in the prison. Specifically, plaintiff refers to "toilets broken, and showers backed up sewage pipes, not the minimum standards of toilets for detainee[]s, or 60 sq. feet of bed space." (Am. Compl., 3, Apr. 28, 2010). As a result of these conditions, plaintiff alleges, he cut his toe "sweeping water out of basin," he had to endure "painful waiting" to use the bathroom, and he had "arguments with other residents due to not enough floor space." (Id.). He seeks injunctive relief and $50,000,000.00 in damages. (Id. at 5).

After answering the complaint in a timely manner, defendants moved for judgment on the pleadings on the ground that the amended complaint failed in various respects to state a claim upon which relief may be granted. Plaintiff has not responded to defendants' motion.[2]

For the reasons that follow, we recommend that defendants' motion to dismiss be granted in part and denied in part.

---

[2] Defendants' motion papers were filed on November 19, 2010. D'Attore was given until December 4, 2010 to respond, and he has not done so.

## PLAINTIFF'S ALLEGATIONS

Plaintiff, now incarcerated in the New York State correctional system, was housed at the Otis Bantum Correctional Center ("OBCC") in Housing Area 6-Upper and the North Infirmary Command ("NIC") Housing Area 2A and 2B during the time of his alleged injury. (See id. at 2). He alleges that, starting on August 18, 2009 in OBCC 6-Upper, from approximately 7:00 AM to 7:00 PM "and around the clock[] until I moved," the "toilets [were] broken, and showers [had] backed up sewage pipes." (Id.). He also complains that the toilets lacked "the minimum standards . . . for detainee[]s," and that there was inadequate "bed space." (Id. at 3). Plaintiff further alleges: "I cut my toe, and ripped toenail, sweeping water out of basin, due to water back up, having to endure painful waiting to go to bathroom, and have had many arguments with residents due to not enough floorspace." (Id.). He claims that, as a result of these conditions, he suffered "ripped toe nail, bleeding, anti-biotics, bandages, feelings of depression, pain, anxiety, anger, embarrassment having to get around with only bandage on foot." (Id.). He also complains that CO Mitchell never addressed the issue of clogged showers. (Id.).

Plaintiff then asserts that on August 7, 2009 and April 20,

3

2010, between 7:00AM and 7:00PM, toilets were similarly broken in NIC 2A and NIC 2B, and that CO Leon "failed to address" both the non-functioning toilets and broken tiles. (Id.) It is unclear from the complaint whether plaintiff is alleging that the toilets in those two locations were not working only on these two specific dates, or whether these were the dates that plaintiff was first housed in NIC 2A and NIC 2B and the inadequate conditions persisted until he was moved. In light of plaintiff's allegations that the inadequate conditions in OBCC 6-Upper continued throughout the day from August 18, 2009 until he was later moved (see id.), we understand plaintiff to allege that the toilets in NIC 2A and NIC 2B were also not working during the duration of the time he was housed there, from the dates specified and regularly thereafter.

As required by the Prison Litigation Reform Act, see 42 U.S.C. § 1997e(a), plaintiff filed a grievance in the correctional facility, citing all of his current claims, as well as referring to alleged verbal assaults and racial discrimination.[3] (Am. Compl., 4). While he admits receiving medical treatment for his injury as a result of the grievance, he claims that nothing was done about

_____

[3] While the other claims are listed elsewhere in the complaint, the first and only reference to "verbal assaults" and "racial discrimination" in the complaint is located on page 4 in response to item E.

4

the showers, the toilets, the bed space, verbal assaults, or racial discrimination. (Id.). Plaintiff alleges that he wrote to "the Commissioner, Warden, Board of Correction[]s, and Southern District Court . . . Attorney General, [and] Mayor's Office." (Id.).   In addition to contacting the Grievance Committee, plaintiff claims that he wrote to defendants Quinones, Mirabel and Schirro, and spoke to CO Mitchell several times "on the issues" and CO Leon many times about "getting the bathroom[]s fixed." (Id. at 5).

Plaintiff seeks injunctive relief for the broken toilets, tiles, showers, and inadequate bed space, as well as $50,000,000.00 in damages. (Id.).

## PROCEDURAL HISTORY

Plaintiff filed his original complaint on April 12, 2010. Pursuant to an order by Chief Judge Preska, the complaint was dismissed as "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." (See Order, Apr. 12, 2010) (quoting Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (internal quotations omitted)). The order granted plaintiff leave to submit an amended complaint, and he did so on May 6, 2010. (See Am. Compl., 1). Defendants filed answers

dated September 10, 2010 (defendants Mirabel, New York City, Schirro, and Quinones), October 19, 2010 (defendant Mitchell) and November 4, 2010 (defendant Leon).

## ANALYSIS

### I.   Rule 12(c) Criteria

Because defendants served and filed an answer to the complaint prior to their motion to dismiss, the motion must be deemed one for judgment on the pleadings under Rule 12(c). See Fed. R. Civ. P. 12(c) (providing for the filing of motions for judgment on the pleadings after the pleadings are closed). The standards for such a motion are the same as those applicable to dismissal motions under Rule 12(b)(6). Wachovia Corp. v. Citigroup, Inc., 634 F. Supp.2d 445, 450 (S.D.N.Y. 2009) (quoting Cleveland v. Caplaw Enters., 448 F.3d 518, 520 (2d Cir. 2006)).

On a motion to dismiss for failure to state a claim, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); accord,

6

e.g., Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 476 (2d Cir. 2006) (internal citation omitted). In assessing such a motion, the court must assume the truth of the well-pled factual allegations of the complaint and must draw all reasonable inferences against the movant. E.g., Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006); Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996). The pleader may not rely, however, on allegations that are only bare legal conclusions, see Starr v. Sony BMG Music Entm't, 592 F.3d 314, 317 n.1 (2d Cir. 2010) (discussing Rule 8(a)) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009)), or "legal conclusions couched as factual allegations". Starr, 592 F.3d at 321 (quoting Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007)).

A complaint is subject to dismissal unless its well-pled factual allegations, if credited, make the claim "plausible." See Iqbal, 129 S. Ct. at 1949; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 560-61 (2007). While the Supreme Court's recent decisions do not require a party to plead "detailed factual allegations" to survive a motion to dismiss, Starr, 592 F.3d at 321 (quoting Twombly, 550 U.S. at 555), they do require that the plaintiff plead "factual content that allows the court to draw the reasonable

7

inference that the defendant is liable for the misconduct alleged".
Id. (quoting Iqbal, 129 S. Ct. at 1949). In any event, "an
unadorned, the-defendant-unlawfully-harmed-me accusation" will not
suffice. Iqbal, 129 S. Ct. at 1949. In short, the pleading must do
more than "tender[] naked assertions devoid of further factual
enhancement," id. (internal quotation marks omitted), and in doing
so must "'raise a right to relief above the speculative level.'"
ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir.
2007) (quoting Twombly, 550 U.S. at 555).

When addressing a 12(b)(6) motion, the court normally may not
consider evidence proffered by the moving party or its opponent.
E.g., Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007);
Healthcare Fin. Group, Inc. v. Bank Leumi USA, 669 F. Supp.2d 344,
347 (S.D.N.Y. 2009). Rather, the court is limited to reviewing the
four corners of the complaint, any documents attached to that
pleading or incorporated in it by reference, any documents that are
integral to the plaintiff's allegations even if not explicitly
incorporated by reference, and facts of which the court may take
judicial notice. See, e.g., ATSI Commc'ns, Inc., 493 F.3d at 98;
Roth, 489 F.3d at 509; Leonard F. v. Israel Disc. Bank, 199 F.3d
99, 107 (2d Cir. 1999).

8

In view of plaintiff's status as an untutored <u>pro</u> <u>se</u> litigant, we read his complaint and motion papers liberally and derive from them the strongest claims and arguments that they may be read to imply. <u>See</u>, <u>e.g.</u>, <u>Triestman</u>, 470 F.3d at 474-76; <u>Collins v. West Hartford Police Dep't</u>, 324 Fed. App'x 137, 138 (2d Cir. 2009). Moreover, liberal pleading rules apply "with particular stringency to [<u>pro</u> <u>se</u>] complaints of civil rights violations." <u>Phillip v. Univ. of Rochester</u>, 316 F.3d 291, 293-94 (2d Cir. 2003). However, the "plausibility" standard articulated in <u>Twombly</u> and <u>Iqbal</u> applies to the pleadings of <u>pro</u> <u>se</u> plaintiffs as well as to those of represented litigants. <u>See</u>, <u>e.g.</u>, <u>Carvel v. Cuomo</u>, 357 Fed. App'x 382, 383-84 (2d Cir. 2009); <u>Sheehy v. Brown</u>, 335 Fed. App'x 102, 104 (2d Cir. 2009); <u>Dorsey v. Fisher</u>, 2009 WL 4985421, *2, *4 (N.D.N.Y. Dec. 15, 2009); <u>Conseillant v. Lafontant</u>, 2009 WL 2163263, *1 (N.D.N.Y. July 20, 2009).


II.  <u>Plaintiff's Request for Injunctive Relief</u>


As noted, in plaintiff's complaint he seeks injunctive relief to remedy the plumbing and related problems that he claims to have encountered at Rikers Island. On January 31, 2011, however, we received a letter from him advising the court that he had been transferred from Otis Bantum Correctional Center on Rikers Island

9

to the New York State correctional system and was being housed at the Five Points Correctional Facility in Romulus, New York. (See Letter to the Court from Gaetano D'Attore Ex. A, Jan. 22, 2011). Although plaintiff's complaint seeks injunctive relief pertaining to the conditions of his confinement at OBCC, "a prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility." Thompson v. Carter, 284 F.3d 411, 415 (2d Cir. 2002). Moreover, "[e]ven if the claim was not moot, plaintiff could not establish the imminent threat of irreparable harm necessary to warrant injunctive relief. Since he is not confined at the facility, the threat of imminent harm has been removed. To the extent that he may be able to establish the existence of an injury suffered during his past confinement, such injury would be compensable by money damages." Miller v. Zerillo, 2007 WL 4898361, *2 (E.D.N.Y. November 2, 2007).

Plaintiff's January 2011 letter asks for relief from alleged denial of medical care at the Special Housing Unit of Five Points Correctional Facility, but neither the warden of Five Points nor any entity in the New York State Department of Correctional Services is named as a defendant in this lawsuit. Mr. D'Attore has therefore been advised that, if he seeks a remedy for the current

10

state of his medical care, he must do so through the medical arm of

the New York State Department of Correctional Services, which is

not presently a party to any case filed by plaintiff in the

Southern District of New York. (See Order, Jan. 31, 2011). As for

the injunction that he seeks against the current defendants,

plainly that must be denied in view of his transfer to State

custody.


III.  Plaintiff's Fourteenth Amendment Claims


To state a claim for a constitutional violation based on

conditions of confinement, plaintiff must allege that a prison

official was deliberately indifferent to a substantial risk of

serious harm to him. Helling v. McKinney, 509 U.S. 25, 35-36

(1993). Thus, the plaintiff must meet two requirements. First, the

risk of harm or deprivation must objectively be "sufficiently

serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Second, a

prison official must have a "sufficiently culpable state of mind,"

id., and that state of mind in prison-condition cases is one of

"deliberate indifference" to inmate health and safety. Helling, 509

U.S. at 35.


A convicted prisoner's claim of deliberate indifference by

those overseeing his care is analyzed under the Eighth Amendment because the right that the plaintiff seeks to vindicate arises from the Eighth Amendment's prohibition of "cruel and unusual punishment." Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009) (quoting Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996)). In the case of a person being held prior to trial, however, the Eighth Amendment does not apply because a pre-trial detainee is not being "punished." Id. (quoting Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000)). Instead, a pre-trial detainee, held in state custody, receives protection against mistreatment by prison officials under the Due Process Clause of the Fourteenth Amendment.[4] See, e.g., Liscio v. Warren, 901 F.2d 274, 276 (2d Cir. 1990); Dove v. City of New York, 2007 WL 805786, *7 (S.D.N.Y. Mar. 15, 2007); Lombardo v. Stone, 2001 WL 940559, *7 (S.D.N.Y. Aug. 20, 2001). Although the Eighth Amendment does not apply to pre-trial detainees, claims by detainees under the Fourteenth Amendment are to be analyzed under the same standard as Eighth Amendment claims by convicted inmates. Cuoco, 222 F.3d at 106; Arroyo v. Schaefer, 548 F.2d 47, 50 (2d Cir. 1977).[5]

---

[4] Similarly, a pre-trial detainee held in federal custody receives protection under the Due Process Clause of the Fifth Amendment. Cuoco, 222 F.3d at 105-06.

[5] Though deliberate-indifference claims are to be analyzed in the same manner under both the Eighth and Fourteenth Amendments, defendants assert in their memorandum of law that it

For the reasons that follow, a portion of plaintiff's amended complaint satisfies both the objective and the subjective components necessary to plead a violation of his Fourteenth Amendment rights.

A.    Some of the Conditions Alleged by Plaintiff Are
      Sufficiently Serious to Trigger Fourteenth-Amendment
      Protection

1.    Toilet and Sewage Issues

Plaintiff's allegations about toilet conditions, if liberally construed, satisfy the objective element for a claim since he alleges facts from which a trier of fact could find that defendants exposed him to conditions that posed a substantial threat to his health and deprived him of the ability to satisfy his basic human needs. Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002); see also Helling, 509 U.S. at 32-33. "The alleged deprivation must be

_____

is unclear from the Amended Complaint whether plaintiff was a pre-trial detainee or sentenced inmate at the time of the events at issue. (See Defs' Mem. of Law in Support of Mot. for J. on the Pleadings, 9, Nov. 19, 2010). In his amended complaint, however, plaintiff identifies himself as a detainee (requesting relief on behalf of "all pre-trial detainees (such as myself) and inmates alike") (See Am. Compl. at 5). Whether plaintiff maintained the status of a detainee throughout the duration of his exposure to the alleged inadequate conditions is unclear, but the same standards would apply whether he was a detainee or an inmate.

13

"sufficiently serious," that is, it must deny plaintiff "the minimal civilized measure of life's necessities." Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001). Only serious threats to health are sufficient to sustain a conditions-of-confinement claim because "society does not expect or intend prison conditions to be comfortable." Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999); see also Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'") (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

Plaintiff first alleges that the toilets were broken, thus forcing him to endure "painful waiting to go to the bathroom," and that the sewage pipes were "backed up." (See Am. Compl. at 3). Liberally construed, these allegations may be interpreted to assert a Fourteenth Amendment claim. See Groves v. New York, 2010 WL 1257858, *8 n. 15 (N.D.N.Y. Mar. 1, 2010). "[R]easonably adequate sanitation and the ability to eliminate and dispose of one's bodily waste without unreasonably risking contamination are basic identifiable human needs of a prisoner," Odom v. Keane, 1997 WL 576088, *5 (S.D.N.Y. Sept. 17, 1997) (quoting Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994)), and therefore plaintiff's allegations in this respect sufficiently plead a

14

potential constitutional violation.

Failure to provide a prison inmate access to a toilet is a sufficiently serious deprivation and satisfies the objective component of a deliberate-indifference claim. See, e.g., Candelaria v. Greifinger, 1998 WL 187383, *3 (N.D.N.Y. Apr. 15, 1998). Plaintiff in Candelaria complained of no working toilet in his cell and further claimed that he was denied access to the ward bathroom. Id. In denying defendants' motion to dismiss, the court held that the objective component had been satisfied, that is, the conditions alleged were sufficiently serious. Id. The alleged failure to provide access to a working toilet for an extended period of time such that a pre-trial detainee may dispose of his bodily waste -- one of life's most "basic and identifiable human needs," Odom, 1997 WL 576088 at *5 -- violates "the contemporary standards of decency," Phelps, 308 F.3d at 185, and makes satisfaction of the objective element of plaintiff's Fourteenth Amendment claim plausible.

This conclusion is further supported by comparison with Odom, which defendants cite. The plaintiff in that case alleged that he was housed in an unsanitary cell without a working toilet. Odom, 1997 WL 576088 at *1. He specifically asserted that, for a period

of two months, the toilet in his cell did not work between 9:00 PM and 7:00 AM. Odom, 1997 WL 576088 at *5. While the court in Odom held in favor of defendants, it did so on summary judgment, not a motion to dismiss, and in so ruling it recognized the constitutional need for working toilets. Thus it reasoned, on summary-judgment record, that "it is difficult to fathom how one toilet flushing mechanism, and not all of the flushing mechanisms on one water line, could malfunction on a regular basis only between the hours of 9:00 PM and 7:00 AM." Odom, 1997 WL 576088 at *5. In contrast to Odom, plaintiff here alleges that the toilets in two separate dormitories did not function. (See Am. Compl. at 3). Moreover, the issue in Odom was whether plaintiff had proved facts sufficient to defeat defendants' summary-judgment motion, a more stringent standard than the pleading requirements that are necessary to defeat defendants' motion to dismiss in the current proceeding. Odom, 1997 WL 576088 at *1.

Plaintiff also alleges that he confronted "backed up sewage pipes." (See Am. Compl. at 3). The Second Circuit has held that for prison officials "knowingly to allow an area to remain filled with sewage and excrement for days on end" would satisfy the objective prong. Gaston, 249 F.3d at 166. Plaintiff in Gaston demonstrated that the area directly in front of his cell was filled with human

16

feces, urine, and sewage water for several days, and that prison officials ignored numerous requests to clean it. <u>Gaston</u>, 249 F.3d at 161. Although plaintiff in this case does not plead with specificity whether the backed-up sewage pipes caused an area to remain filled with sewage for "days on end," he has alleged facts from which a trier of fact could find that the conditions of his confinement in this regard posed a substantial threat to his health. <u>Phelps</u>, 308 F.3d at 185. Plaintiff alleges not only that the sewage pipes were backed up, but that he injured himself in sweeping water out of a "basin" due to it being backed up. In applying the standard articulated in <u>Iqbal</u>, the complaint's factual allegations make the claim "plausible." <u>Iqbal</u>, 129 S.Ct. at 1949.

    2.   <u>Overcrowding Issues</u>

    Plaintiff also alleges that he was not afforded sixty square feet of bed space, assertedly resulting in an unconstitutional condition of confinement. (<u>See</u> Am. Compl. at 3). While a New York City rule requires that multiple-occupancy areas in New York City Correction facilities provide a minimum of sixty square feet of floor space per person in the sleeping area, Rules of the City of

New York Bd. of Corr. (40 RCNY) § 1-04(c)(2)[6], a violation of a local rule is not actionable through a section 1983 action, which provides redress only for the deprivation of rights, privileges, or immunities secured by the Constitution and federal laws. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Adickes v. S.H. Kress & Co., 398 U.S 144, 150 (1970).

To establish a section 1983 claim for overcrowding, plaintiff must allege that he was subjected to conditions that constitute or cause the "serious deprivation of basic human needs." Rhodes, 452 U.S. at 347. Morever, the alleged inadequate space must lead to a deprivation of such a human need, such as "essential food, medical care, or sanitation." Id. at 348. Absent any specific allegations that plaintiff was deprived of any basic needs such as food or clothing, or that he was the victim of violence, where no injury is asserted beyond discomfort, such pleadings do not support a Fourteenth Amendment claim. Bell v. Artuz, 1999 WL 253607, *3 (S.D.N.Y. Apr. 29, 1999). Though less than sixty square feet of bed space may be an inconvenience, plaintiff fails to point to any specific human need affected by such conditions. Jones v. Goord,

---

[6] This rule applies to multiple occupancy areas only. Rules of the City of New York Bd. of Corr. (40 RCNY) § 1-04(c)(2). Plaintiff alleges a violation of this rule, but fails to specify whether it is applicable.

435 F. Supp.2d 221, 236 (S.D.N.Y. 2006) (holding that a reasonable finder of fact could not conclude that the "unsanitary conditions," that plaintiffs argued were inherent in sharing fifty square feet of floor space in a double cell amounted to an Eighth Amendment violation).

A person awaiting trial may be detained to ensure his presence at trial and may be subjected to the restrictions of the detention facility so long as those restrictions do not amount to punishment or otherwise violate the Constitution. Bell v. Wolfish, 441 U.S. 520, 536-537 (1979). "[T]he fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" Id. at 537. In Wolfish, the Court held that seventy-five square feet of bed space was more than adequate for two pre-trial detainees, amounting to roughly 37.5 square feet per person. Id. at 541-42. While plaintiff complains of not being afforded sixty square feet of "living space"[7] (see Am. Compl. at 5), such deprivation does not amount to a constitutional

---

[7] Plaintiff uses both "living space" and "bed space" interchangeably, presumably to refer to the overall size of his cell in OBCC 6-Upper and dorm in NIC 2A and 2B. (See Am. Compl. at 3 ¶ II(D) & ¶ III).

violation. The allegation that there was less than sixty square feet of bed-space does not satisfy the objective prong, in that it is not a "sufficiently serious" deprivation. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). Plaintiff merely claimed that he was not afforded a specific amount of square-feet. He did not allude to any other deprivations resulting from the confinement, nor did he plead that the square-footage provided was so inadequate as to be sufficiently serious. Despite plaintiff's status as an untutored pro se detainee, the complaint's factual allegations do not make the claim plausible, as defined by Iqbal.

### 3.    Racial Discrimination & "Verbal Assault"

Finally, the complaint may be read to assert claims of racial discrimination and verbal assault. (See Am. Compl. at 4). Plaintiff, however, mentions these issues only when stating what claims he presented to the Prison Grievance Committee. (See id.). "Plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Starr, 592 F.3d at 321, and without such factual content, plaintiff's allegations amount to an "unadorned, the-defendant-unlawfully-harmed-me accusation," which will not suffice. Iqbal, 129 S.Ct. at 1949. Since plaintiff has not provided

sufficient factual content as to the racial discrimination and verbal assaults, such claims are not plausible.[8]

### 4.   Conclusion as to the Pleading of Conditions

For the reasons noted, we conclude that plaintiff adequately pleads potential Fourteenth Amendment violations with respect to toilets and sewage, but not otherwise.

**B.   Plaintiff Pleads Sufficient Facts to State a Claim for Deliberate Indifference by Defendants Mitchell, Leon, Mirabel, Quinones, and Schirro.**

Having concluded that plaintiff has alleged that he suffered the objective harm necessary for a Fourteenth Amendment claim, we need to consider whether he adequately pleads that defendants acted with deliberate indifference. See, e.g., Caiozzo, 581 F.3d at 72. We conclude that he has done so.

---

[8] We also note that verbal abuse does not constitute a violation of an inmate's constitutional rights. See, e.g., Fischl v. Armitage, 128 F.3d 50, 54 (2d Cir. 1997) ("mere allegations of verbal abuse, threats or defamations by a correctional officer to a prisoner are not cognizable in a Section 1983 action"); Lunney v. Brureton, 2005 WL 121720, *11 (S.D.N.Y. Jan. 21, 2005) (inmate's "general allegations of threats and harassment are insufficient to state a claim because comments that are merely 'insulting' or 'disrespectful' do not give rise to a constitutional violation" (citing cases)); see also supra, at 34-35.

The deliberate-indifference requirement implicates a subjective test. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Moreover, although Farmer involved an Eighth Amendment claim by a convicted inmate, it applies as well to claims by pre-trial detainees. Caiozzo, 581 F.3d at 71-72. As the Second Circuit in Caiozzo held, "it is a logical extension of the principles recognized in Farmer that an injured state pretrial detainee, to establish a violation of his Fourteenth Amendment due process rights, must prove, inter alia, that the government-employed defendant disregarded a risk of harm to the plaintiff of which the defendant was aware." Caiozzo, 581 F.3d at 71.

Plaintiff sufficiently pleads facts suggesting that defendants were aware that the inadequate conditions in the prison posed a substantial risk of serious harm to him, and disregarded that risk.

### 1.    CO Mitchell & CO Leon

Plaintiff alleges that he spoke with CO Mitchell "several times on the issues" and with CO Leon "many times about getting the bathrooms fixed." (See Am. Compl. at 5). Plaintiff mentions defendants Leon and Mitchell again in alleging that, despite plaintiff's numerous requests to have the toilets and sewage pipes

fixed, they never addressed these issues. (See id. at 3). In light of defendants' alleged awareness of the inadequate conditions of plaintiff's confinement and their disregard of that risk, defendants' motion to dismiss with respect to CO Mitchell and CO Leon should be denied.

In order to establish a violation of a pre-trial detainee's Fourteenth Amendment rights, plaintiff must plead "'a sufficiently culpable state of mind' on the part of the defendant official, such as deliberate indifference." Gaston, 249 F.3d at 164 (quoting Farmer, 511 U.S. at 834). Moreover, "[p]roof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983." Id. However, "plaintiffs are not required to plead detailed facts in addition to and in support of their particular allegations of personal involvement." Locicero v. O'Connell, 419 F. Supp.2d 521, 525-526 (S.D.N.Y. 2006). Plaintiff sufficiently pleads defendants Leon and Mitchell's personal involvement in the alleged wrong, in that he claims that he notified each of them a number of times about the broken toilets and backed-up sewage pipes, and they failed to rectify the inadequate conditions.

Even a one-line statement that defendants had actual knowledge

23

of the alleged conditions may be sufficient to defeat defendants'
motion to dismiss, if the alleged facts make such knowledge
plausible. See, e.g., Gaston, 249 F.3d at 165-66. Plaintiff in
Gaston alleged that the prison officials were aware of the
inadequate prison conditions due to the fact that those officials
made daily rounds and were responsible for putting plaintiff in the
"inhumane conditions." Id. In the current proceeding, defendants
Mitchell's and Leon's knowledge of the alleged wrong is even more
evident because plaintiff claims that he notified each of them
"several" and "many" times, respectively, about the specific
conditions. (See Am. Compl. at 5). The Second Circuit in Gaston
held that plaintiff's statement that defendants had actual
knowledge of the inhumane conditions was not conclusory because it
was based on the premise that defendants made daily rounds, which
should have led the district court to order further proceedings
with respect to the deliberate-indifference claims. Id. at 166.

Because plaintiff has alleged facts from which it is plausible
to infer that defendants Mitchell and Leon were aware of a
substantial risk of serious harm to plaintiff and disregarded that
risk, defendants' motion to dismiss should be denied.

2.   <u>Wardens Mirabel & Quinones and Commissioner Schirro</u>

Plaintiff lists Wardens Mirabel and Quinones and Corrections Commissioner Schirro as the recipients of letters from him informing them of the issues pertaining to plaintiff's confinement.[9] (<u>See</u> Am. Compl. at 5). Although the complaint does not contain information as to whether or not the letters specifically referred to the broken toilets and backed up sewage pipes, we read plaintiff's complaint liberally in light of his <u>pro se</u> status and derive from it the most reasonable claims and arguments that it may be read to imply. <u>See</u>, <u>e.g.</u> <u>Triestman</u>, 470 F.3d at 474-76.

These three defendants are senior supervisory personnel in the New York City Department of Correction. It is well settled that, regardless of a defendant's position in the governmental hierarchy, he cannot be held liable under section 1983 for an award of damages absent some form of personal involvement in the constitutional tort. <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (citing cases). Until recently the accepted standard for personal

---

[9] Defendants are incorrect when they state "she [Commissioner Schirro] is mentioned only in the caption of the complaint, and thus plaintiff has failed to allege any facts suggesting her personal involvement as a supervisor or otherwise." (Defs.' Mem. of Law at 8).

involvement by a supervisor was that articulated in <u>Colon v.
Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995), in which the Second
Circuit identified five categories of conduct that may demonstrate
the personal involvement of a supervisory defendant. Such personal
involvement, the Court held, may be shown by evidence that:

> (1) the defendant participated directly in the alleged
> constitutional violation, (2) the defendant, after being
> informed of the violation through a report or appeal, failed
> to remedy the wrong, (3) the defendant created a policy or
> custom under which unconstitutional practices occurred,
> or allowed the continuance of such a policy or custom, (4) the
> defendant was grossly negligent in supervising subordinates
> who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference to the rights of inmates by
> failing to act on information indicating that unconstitutional
> acts were occurring.

<u>Id.</u> See also <u>Wright</u>, 21 F.3d at 501; <u>Moffitt v. Town of Brookfield</u>,
950 F.2d 880, 886 (2d Cir. 1991) (quoting <u>Williams v. Smith</u>, 781
F.2d 319, 323-24 (2d Cir. 1986)).

Nonetheless, the scope of what qualifies as "personal
involvement" by a supervisor has recently come into question by
virtue of the <u>Iqbal</u> decision, in which the Supreme Court held that
"[b]ecause vicarious liability is inapplicable to . . . § 1983
suits, a plaintiff must plead that each Government-official
defendant, through the official's own individual actions, has

26

violated the Constitution." Iqbal, 129 S.Ct. at 1948. The Second
Circuit has not yet addressed how Iqbal affects the five categories
of conduct that give rise to supervisory liability under Colon.
However, because Iqbal specifically rejected the argument that "a
supervisor's mere knowledge of his subordinate's discriminatory
purpose amounts to the supervisor's violating the Constitution,"
id. at 1949, several decisions in this district have held that
Iqbal has nullified most of the longstanding Colon factors. See
Bellamy v. Mount Vernon Hosp., 2009 WL 1835939, *4 (S.D.N.Y. June
26, 2009); Newton v. City of New York, 640 F. Supp.2d 426, 448
(S.D.N.Y. July 31, 2009) ("passive failure to train claims pursuant
to section 1983 have not survived the Supreme Court's recent
decision in Ashcroft v. Iqbal"). These courts have concluded that
"[o]nly the first and part of the third Colon categories pass
Iqbal's muster,"[10] and that "[t]he other Colon categories impose the
exact types of supervisory liability that Iqbal eliminated".
Bellamy, 2009 WL 1835939 at *6; see also Spear v. Hugles, 2009 WL
2176725, *2 (S.D.N.Y. July 20, 2009) ("The Supreme Court explicitly
rejected the argument that 'a supervisor's mere knowledge of his

---

[10] That is, "a supervisor is only held liable if that
supervisor participates directly in the alleged constitutional
violation or if that supervisor creates a policy or custom under
which unconstitutional practices occurred." Bellamy, 2009 WL
1835939 at *6.

subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.' . . . Accordingly, only the first and third Colon factors have survived the Supreme Court's decision in Iqbal.") (quoting Iqbal, 129 S.Ct. 1948).

We disagree with this broad interpretation of Iqbal, as have a number of other decisions in this district. See Qasem v. Toro, 737 F. Supp.2d 147, 151-52 (S.D.N.Y. 2010); D'Olimpio v. Crisafi, 718 F. Supp.2d 340, 346-47 (S.D.N.Y. 2010). We believe, as observed in Sash v. United States, 674 F. Supp.2d 531 (S.D.N.Y. 2009), that "[i]t was with intent-based constitutional claims in mind, specifically racial discrimination, that the Supreme Court rejected the argument that 'a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.'" Id. at 544 (quoting Iqbal, 129 S.Ct. at 1949). Thus, as in the present case, where the claim does not require a showing of discriminatory intent, the personal-involvement analysis set forth in Colon should still apply. See id.; D'Olimpio, 718 F. Supp.2d at 347.

Looking, therefore, to Colon, we view the second category -- that "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong," Colon, 58 F.3d at

873 -- as the most applicable for evaluating plaintiff's claim.
Plaintiff's allegations that he wrote letters to defendants
Quinones, Mirabel and Schirro evidence a possible failure by them
"to remedy a wrong after being informed through a report or
appeal," Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003), and
thus plaintiff sufficiently pleads that defendants disregarded a
risk of excessive harm of which they were aware. Caiozzo, 581 F.3d
at 71. Plaintiff wrote to defendants informing them of the
"issues," which, liberally construed, pertains to the broken
toilets and backed-up sewage pipes. (Am. Compl. at 3). "An official
acts with deliberate indifference when that official 'knows of and
disregards an excessive risk to inmate health or safety; the
official must both be aware of facts from which the inference could
be drawn that a substantial risk of serious harm exists, and he
must also draw that inference.'" Rodriquez v. Westchester County
Jail Corr. Dep't, 2003 WL 1907963, *4 (S.D.N.Y. Apr. 17, 2003)
(quoting Farmer, 511 U.S. at 837). In light of plaintiff's
allegations of his communication of the issues with these
supervisory defendants, he sufficiently pleads that they were
involved in the alleged violations of his rights and that they
acted with a sufficiently culpable state of mind. See Saar v.
United States Dep't of Justice, 705 F.Supp. 999, 1006 (S.D.N.Y.
1989) (finding personal involvement by warden where plaintiff

29

informed warden by letter about the alleged deprivations); cf. Gaston, 249 F.3d at 166 (because plaintiff did not indicate that any complaints about the conditions were communicated to the Commissioner, there was insufficient personal involvement). Since plaintiff has alleged facts that sufficiently put in issue these defendants' awareness and disregard of an excessive risk to him, their motion to dismiss the claims against them should be denied.

C.   Plaintiff Does Not Sufficiently Plead a Monell Claim

The City of New York is listed in the caption as one of the six defendants, but plaintiff does not mention it anywhere else throughout the complaint. (See Am. Compl. at 2). He therefore fails to plead a cognizable claim against the City.

In order to hold a municipality liable under 42 U.S.C. § 1983, plaintiff must prove that a municipal policy or custom caused the deprivation of his constitutional rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-691 (2d Cir. 1978). At this stage of the proceedings, plaintiff must provide in his complaint specific allegations of constitutional violations and of a municipal policy or custom that caused these violations. A "mere assertion" of a policy or practice is not sufficient, Zahra v. Town of Southhold,

30

48 F.3d 674, 685 (2d Cir. 1995); plaintiff must make allegations describing specific actions that suggest "at least circumstantially" the existence of such a policy or practice. Id.; see also Jackson v. City of New York, 2011 WL 1533471, *18 (E.D.N.Y. Mar. 3, 2011) (dismissing Monell claim where plaintiff offered no supporting instances of wrongful municipal policy or custom but merely stated that one existed).

Plaintiff may demonstrate the existence of a policy or practice in a variety of ways. First, he may provide evidence of a formal policy officially adopted by the municipality. Monell, 436 U.S. at 690. Second, a single deliberate unconstitutional act or decision, when taken by an authorized decision-maker, may be considered policy and thus subject a municipality to liability. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404-06 (1997); Pembauer v. City of Cincinnati, 475 U.S. 469, 481-84 (1986). Third, a policy may be established by showing that the acts of the municipal agent were part of a widespread practice that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware. Bd. of County Comm'rs, 520 U.S. at 403-04; City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Monell, 436 U.S. at 690-91. Fourth, where a municipality's failure to provide adequate training or supervision of its agents

31

rises to the level of deliberate indifference, section 1983 liability may lie against the municipality. <u>Brown</u>, 520 U.S. at 407. Finally, we note that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." <u>DeCarlo v. Fry</u>, 141 F.3d 56, 61 (2d Cir. 1998) (quoting <u>Ricciuti v. New York Transit Auth.</u>, 941 F.2d 119, 123 (2d Cir. 1991)).

Plaintiff's amended complaint is devoid of allegations that the City had an unconstitutional policy or custom that caused plaintiff's injury. Furthermore, plaintiff does not allege that the violation of his constitutional rights was the result of a widespread practice that constitutes custom or usage, nor does he allege that a single act or decision by an authorized decision-maker resulted in the broken toilets and backed-up sewage pipes or the failure to repair them. Finally, the complaint fails to allege any failure to train on behalf of the City. Therefore, plaintiff has failed to allege any basis for municipal liability. <u>See</u>, <u>e.g.</u>, <u>Walker v. Shaw</u>, 2010 WL 2541711, *7 (S.D.N.Y. June 23, 2010); <u>Curto v. Bender</u>, 2005 WL 724156, *11 (W.D.N.Y. Mar. 28, 2005) (motion to dismiss granted "where, as here, plaintiff does not identify the nature of the purported policy"). D'Attore fails to allege facts that plausibly implicate defendant. Thus, despite his <u>pro se</u>

32

status, the motion to dismiss should be granted with respect to his claims against the City.

## Conclusion

For the reasons stated above, we recommend that defendants' motion for dismissal be granted in part and denied in part. We recommend that plaintiff's request for injunctive relief be denied as moot and unsupported in view of his transfer to State custody. We further recommend that his claims based on alleged discrimination and verbal assaults, as well as all claims against the City be dismissed for failure to state a claim. As for his claims based on allegedly malfunctioning toilets and backed-up sewage pipes, we recommend that dismissal as against defendants Mirabel, Quinones, Mitchell, Leon, and Schirro be denied.

Finally, with regard to the three damage claims that should be dismissed for failure to state a claim, we recommend that the dismissal be with prejudice for one of them.[11] Ordinarily plaintiffs

---

[11] Since the injunction request is moot, its dismissal should be with prejudice. See, e.g., Webster v. Reproductive Health Services, 492 U.S. 490, 512-13 (1989) (dismissing with prejudice the portion of plaintiff's claim that was rendered moot where plaintiffs were no longer adversely affected by the law that they were challenging); Cavalea v. Suffolk County Sheriff's Office, 2011 WL 742614, *3 (E.D.N.Y. Feb. 23, 2011) (dismissing

-- and especially <u>pro</u> <u>se</u> plaintiffs --   should be given the opportunity to replead at least once if it appears that they can correct pleading errors. <u>See</u>, <u>e.g.</u>, <u>Mohammad v. Bin Tarraf</u>, 114 Fed. App'x 417, 419 (2d Cir. 2004) (permitting plaintiff to replead where he "might adequately allege harms" sufficient to state a claim); <u>Pratts v. Coombe</u>, 59 Fed. App'x 392, 394 (2d Cir. 2003) (allowing plaintiff to replead where he "has alluded . . . to the existence of facts that may flesh out his allegations"). It is at least possible that plaintiff might adequately plead claims for discrimination and might sufficiently assert facts that would trigger potential liability on the part of the City if given the chance to replead. Any claim for verbal attacks, however, would be legally insufficient since such conduct does not amount to a constitutional violation. <u>See</u>, <u>e.g.</u>, <u>Purcell v. Coughlin</u>, 790 F.2d 263, 265 (2d Cir. 1986) (affirming that plaintiff's allegations that a prison guard called him names "did not allege a constitutional violation"); <u>accord</u> <u>Johnson v. Eggersdorf</u>, 8 Fed. Appx. 140, 143 (2d Cir. 2001) ("allegations of verbal harassment are insufficient to base a §1983 claim on if no specific injury is alleged," and specific injury must be more than <u>de</u> <u>minimus</u> emotional or psychological scars); <u>James v. Hayden</u>, 2010 WL

---

with prejudice plaintiff's claim for injunctive relief against correctional officers where he was transferred after making the complaint).

3703841, *4 (S.D.N.Y. Sept. 21, 2010) ("verbal harassment or even threats alone are not actionable under 42 U.S.C. § 1983"). Accordingly, we recommend that the verbal-abuse claim be dismissed with prejudice but that the dismissal of the discrimination and Monell claims should be without prejudice to repleading within thirty days after dismissal.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Jed S. Rakoff, Room 1340, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); Thomas v. Arn, 470 U.S. 140, 150-52 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

DATED: New York, New York
       June 2, 2011


                              RESPECTFULLY SUBMITTED,


                              MICHAEL H. DOLINGER
                              UNITED STATES MAGISTRATE JUDGE


Copies of the foregoing Report and Recommendation have been mailed
today to:

Mr. Gaetano D'Attore
Five Points Correctional Facility
State Route 96
P.O. Box 119
Romulus, New York 14541

Lesley Berson, Esq.
New York City Law Department
100 Church Street
New York, New York 10007