```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
GAETANO D'ATTORE,                  :

              Plaintiff,           :        REPORT & RECOMMENDATION

          -against-               :        10 Civ. 3102 (JSR) (MHD)

NEW YORK CITY, (CORPORATION        :
COUNSEL), NEW YORK CITY DEPARTMENT
OF CORRECTION'S COMMISSIONER DR.   :
DORA B. SCHRIRO (WARDEN), EVELYN
MIRABAL (WARDEN), JUAN QUINONEZ,   :
(CORRECTIONAL OFFICER)-MITCHELL,
SHIELD #9627-TOUR 7:00AM 3:00PM,   :          7/24/14
(CORRECTIONAL OFFICER) LEON,
SHIELD #18527 TOUR 7:00-3:00PM,    :

              Defendants.          :
----------------------------------X
```

TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:

Pro se plaintiff Gaetano D'Attore, now a prisoner in the New York State correctional system, commenced this section 1983 lawsuit against New York City and five officials and employees of the Department of Correction ("DOC") to challenge certain conditions of his confinement in two facilities of the City's jail complex on Rikers Island. After two sets of amendments to the complaint and two separate orders dismissing significant portions of his pleadings, he is left with two claims of inadequate conditions at two facilities. First, he alleges that at least one shower in the Otis Bantum Correctional Center ("OBCC") had overflowing water

1

because of backed-up sewage, and that on one occasion he tried to move the water with his foot but, because of a broken tile, he stubbed one of his big toes and lost his toenail, with resultant pain. Second, he asserts in his complaint that because of overcrowding and occasional non-functioning toilets at North Infirmary Command ("NIC"), he sometimes had to wait to urinate or relieve his bowels, and as a consequence suffered discomfort or pain during those periods of time. He further complains that the defendant correction officers and officials were deliberately indifferent to the problems with the plumbing.

With discovery complete, defendants have moved for summary judgment. (Docket nos. 107-13). Plaintiff in his turn has also moved for judgment. (See Notice of Motion dated Feb. 25, 2014). For the reasons that follow, we recommend that defendants' motion be granted and plaintiff's motion denied.

2

Prior Proceedings

In a 2010 pleading labeled "Amended Complaint"[1], plaintiff asserted a variety of prison-condition claims based on his experience as a pretrial detainee at the OBCC and the NIC. (Docket no. 4). These included allegations about non-functioning toilets and sewage in at least one shower stall, with the resultant toe-stubbing incident, as well a claim for alleged overcrowding and apparent claims for racial discrimination and a "verbal assault". (Id.). He sought both damages and injunctive relief. (Id.).

The defendants -- including the City as well as DOC Commissioner Dr. Dora B. Schriro, Wardens Evelyn Mirabel and Juan Quinones, and Corrections Officers Katia Leon and Steven Mitchell -- moved to dismiss the complaint in its entirety. (Docket no. 25). Ultimately that motion was granted in part, with the court holding (1) that plaintiff's injunction request was moot, (2) that his claims for discrimination and a verbal assault were legally insufficient, and (3) that plaintiff had failed to plead a legally cognizable claim against the City or DOC. (Order dated Jan. 31,

---

[1] Plaintiff's original pro se complaint was dismissed sua sponte under 42 U.S.C. § 1915(e), and he was instructed to file an amended complaint within 60 days (Order dated Apr. 12, 2010 (Docket no. 3)), a directive with which he complied.

3

2011). The toilet and shower claims were held to pass pleading muster as against the individual defendants, and plaintiff was given leave to replead with respect to the discrimination and Monell claims. D'Attore v. New York City, 2011 WL 3629166, at *3-12 (S.D.N.Y. June 2, 2011), adopted, 2011 WL 3629018 (S.D.N.Y. Aug. 17, 2011).

Plaintiff subsequently filed a Second Amended Complaint (Docket no. 34), which reiterated his toilet and shower claims, but in that pleading he did not attempt to correct the dismissed claims and did not list as defendants the five individuals named in the preceding complaint. Instead, plaintiff again listed the City and DOC as defendants, added New York State and the state's Department of Correctional Services ("DOCS")[2], and asserted a new assault claim directed at a fellow prisoner named William Hennessey, as well as -- seemingly -- a failure-to-protect claim against the other defendants. (2d Am. Compl.).

Both the City and State defendants moved to dismiss that complaint. (Docket no. 52). The City defendants argued that DOC is not a suable entity and that plaintiff had failed to state a Monell

---

[2] Plaintiff alleged that New York State and DOCS were responsible for the operation of the facilities at Rikers Island.

claim; the State and DOCS invoked Eleventh Amendment immunity. (See Docket nos. 53, 62, 66-67). The court granted these motions on the stated grounds, but also -- in light of plaintiff's status as a pro se litigant -- deemed the Second Amended Complaint to have been intended to incorporate the toilet and shower claims from its predecessor as against the five individual DOC defendants. (See March 4, 2013 Report & Recommendation ("R&R") at 9-32; Order dated March 27, 2013).[3]


The Current Motions


Following completion of discovery, the five remaining defendants have moved for summary judgment on two principal grounds. (Docket nos. 107-13). First, they assert that plaintiff has not complied with the statutory requirement that he exhaust prison administrative remedies on his surviving claims. (Defs.' Mem. of Law 6-14). Second, they argue that he fails to demonstrate a basis for showing either that the challenged conditions in the OBCC and the NIC were so adverse as to trigger constitutional

_____

[3] As for Mr. Hennessey, plaintiff never served him and the court dismissed him from the case sua sponte for lack of supplemental jurisdiction over the assault claim against him. (See R&R at 28-31).

scrutiny or that the individual defendants were deliberately indifferent to those conditions. (Id. at 14-22).

Plaintiff responds in both his own motion and his opposition to defendants' motion by asserting that he did exhaust his administrative remedies. (E.g., Pl.'s Mem. of Law 9-12; Pl.'s Opp. Mem. of Law 4-7). He further argues that the cited problems with the toilets and showers were sufficiently severe to demand correction and that the individual defendants were on either actual or constructive notice of the problems and failed to act. (Pl.'s Mem. of Law 14-26; Pl.'s Opp. Mem. of Law 8-15).

ANALYSIS

I. Defendants' Motion

We address both the exhaustion and the merits arguments of defendants in that order. Before doing so, we summarize the basic criteria for assessing summary-judgment motions.

6

A. <u>Rule 56 Standards</u>

The court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>see</u>, <u>e.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Holland v. Goord</u>, 758 F.3d 215, 220 (2d Cir. 2014); <u>Feingold v. New York</u>, 366 F.3d 138, 148 (2d Cir. 2004). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law . . .' [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Shade v. Hous. Auth. of New Haven</u>, 251 F.3d 307, 314 (2d Cir. 2001) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)); <u>see also</u> <u>Dalberth v. Xerox Corp.</u>, __ F.3d __, 2014 WL 4390695, at *9 (2d Cir. Sept. 8, 2014). It is axiomatic that the responsibility of the court in deciding a summary-judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986); <u>see</u>, <u>e.g.</u>, <u>Anderson</u>, 477 U.S. at 255;

Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010); Howley v. Town of Stratford, 217 F.3d 141, 150-51 (2d Cir. 2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see, e.g., Celotex, 477 U.S. at 323; Koch v. Town of Brattleboro, Vt., 287 F.3d 162, 165 (2d Cir. 2002). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy his initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. See, e.g., Celotex, 477 U.S. at 322-23, 325; PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). If the movant fails to meet his initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. See, e.g., Adickes v. S.H. Kress & Co.,

8

398 U.S. 144, 160 (1970); Giannullo v. City of N.Y., 322 F.3d 139, 140-41 (2d Cir. 2003).

If the moving party carries his initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact on any such challenged element of its claim. See, e.g., Beard v. Banks, 548 U.S. 521, 529 (2006); Celotex, 477 U.S. at 323-24; Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). In doing so, the opposing party may not rest on "mere allegations or denials" of the factual assertions of the movant, see, e.g., Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 59-60 (2d Cir. 2004), nor may he rely on his pleadings or on merely conclusory factual allegations. See, e.g., Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). He must also "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Brown v. Eli Lilly and Co., 654 F.3d 344, 358 (2d Cir. 2011); Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005). Rather, he must present specific evidence in support of his contention that there is a genuine dispute as to the material facts. See, e.g., Celotex, 477 U.S. at 324; Brown, 654 F.3d at 358; Scotto v.

9

Almenas, 143 F.3d 105, 114 (2d Cir. 1998); Rexnord Holdings, Inc.
v. Bidermann, 21 F.3d 522, 526 (2d Cir. 1994).

When a non-attorney litigant appears pro se, he is ordinarily
extended "special solicitude". See, e.g., Tracy v. Freshwater, 623
F.3d 90, 100-02 (2d Cir. 2010)(citing cases); see also Jackson v.
Fed. Express, __ F.3d __, 2014 WL 4412333, at *4 (2d Cir. Sept. 9,
2014). Of particular relevance in a summary-judgment context, "the
submissions of a pro se litigant must be construed liberally and
interpreted to raise the strongest arguments they suggest."
Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir.
2006)(quoting inter alia Pabon v. Wright, 459 F.3d 241, 248 (2d
Cir. 2006)). That said, a pro se litigant defending against a
summary-judgment motion must still satisfy the requirement of Rule
56 that he demonstrate the existence of genuine triable issues of
material facts as to all elements of his claims or defenses. See,
e.g., Singleton v. Williams, 2014 WL 2095024, at *3 (S.D.N.Y. May
20, 2014); Faulk v. New York City Dep't of Corr., 2014 WL 239708,
at *4 (S.D.N.Y. Jan. 21, 2014). "Evidence which is merely
colorable, conclusory, speculative or not significantly probative
is insufficient to withstand a summary judgment motion." Singleton,
2014 WL 2095024 at *3 (quoting Jermosen v. Coughlin, 877 F. Supp.
864, 867 (S.D.N.Y. 1995)).

## B. Exhaustion of Administrative Remedies

Defendants first target plaintiff's asserted failure to comply with the requirement of the Prison Litigation Reform Act ("PLRA") that the plaintiff fully exhaust his available administrative remedies before seeking relief in court. See 42 U.S.C. § 1997e(a). In substance, they argue that plaintiff failed to file any prison grievances about his current toilet and shower complaints, as authorized by the applicable regulations of the DOC. (Defs.' Mem. of Law 6-14). They further assert that, even if he could be deemed to have filed pertinent first-stage grievances, he never pursued the various appellate steps specified by the DOC rules. (Id. at 9-11). Plaintiff asserts, at least in general terms, that he did comply. (See, e.g., Pl.'s 56.1 Statement ¶¶ 16-29).

### 1. The Exhaustion Requirement

The PLRA prohibits a prisoner from bringing a prison-condition claim under 42 U.S.C. § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The goal of this requirement is "'to reduce the quantity and improve the quality of prisoner suits . . . [and to afford] corrections officials time and opportunity to address complaints internally

11

before allowing the initiation of a federal case.'" Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011) (quoting Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (quoting Porter v. Nussle, 534 U.S. 516, 524-25 (2002))). The PLRA requires "proper exhaustion," which the Supreme Court has characterized as "'using all steps that the agency holds out, and doing so properly.'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (emphasis in original) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)); accord, e.g., Amador, 655 F.3d at 96.

The route to exhaustion is presumptively that laid out by the pertinent prison system in its applicable regulations. See, e.g., Jones v. Bock, 549 U.S. 199, 219 (2007). Of particular note, "an untimely or otherwise procedurally defective" use of the grievance procedure does not satisfy the exhaustion requirement. Woodford, 548 U.S. at 83-84.

Under the PLRA, if an inmate fails to exhaust all applicable prison remedies with respect to a claim, the federal court is barred from considering that claim when asserted under section 1983. Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009) (quoting, inter alia, Jones, 549 U.S. at 211); Torres v. Carry, 672 F. Supp.

2d 338, 342-43 (S.D.N.Y. 2009).[4] The Second Circuit has, however, recognized three exceptions to the PLRA's exhaustion requirements. See, e.g., Ruggiero v. Cnty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006). A prisoner may proceed with a prison-conditions claim even though he has not exhausted his administrative remedies if "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such as way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." Id. (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).[5]

---

[4] The defense of failure to exhaust is treated as an affirmative defense, and hence the defendants must prove its factual basis. Jones, 549 U.S. at 216-17.

[5] The Second Circuit has not yet definitively stated whether a successful invocation of any of these exceptions would survive the Supreme Court's decision in Woodford v. Ngo, which requires that prisoners properly exhaust their administrative remedies by "using all steps that the agency holds out, and doing so properly." Woodford, 548 U.S. at 90 (emphasis in original) (quoting Pozo, 286 F.3d at 1024). Nonetheless, courts within the circuit have continued to apply the three-exception analysis to prison-condition claims when the prisoner is alleged to have failed to properly exhaust his remedies. Compare, e.g., Amador, 655 F.3d at 102-03 (invoking Macias v. Zenk, 495 F.3d 37, 43 n.1 (2d Cir. 2007), which declined to "decide what effect Woodford has on Hemphill's" three-exception rule), and Ruggiero, 467 F.3d at 176, with Vogelfang v. Riverhead Cnty. Jail Officers, 2009 WL 230132, at *2 (2d Cir. Feb. 2, 2009) (remanding a summary-judgment decision to the district court, which had failed to

In support of defendants' motion, they first summarize the requirements of the DOC grievance procedure. (Defs.' Mem. of Law 7-8). They then proffer declarations by two DOC officials to the effect that, based on a review of DOC files, they determined that plaintiff had never filed a relevant grievance and had never undertaken any required appellate steps under the Inmate Grievance Resolution Program ("IGRP") rules. (Johnson Decl. ¶¶ 4-14; Duverge Decl. ¶¶ 3-7).

During the pertinent period, the IGRP rules required the prisoner to undertake a five-step process to exhaust his remedies. (Johnson Decl. ¶ 4.) At the first stage he was required to file a written grievance, within ten days after the relevant event, by either placing it in a grievance box or delivering it to the office of the IGRP. (Johnson Decl. ¶ 5 & Ex. 1 at 8-9). Each grievance was then given an identification number, which was recorded in a log, and a copy was placed in the prisoner's individual grievance file.

---

"consider whether [plaintiff's] failure . . . to exhaust administrative remedies should be excused under the Hemphill line of cases"), Jones v. Allen, 2010 WL 3260081, at *3 (S.D.N.Y. Aug. 9, 2010) (suggesting that at least the first two exceptions to the exhaustion requirement remain valid post-Woodford), and Partee v. Goord, 2007 WL 2164529, at *4 (S.D.N.Y. July 25, 2007) (concluding that plaintiff was justified in failing to exhaust his claim with CORC where the IGRC decision declared his grievance to be outside its purview).

14

(Id.) The Grievance Supervisor or Grievance Officer would then investigate the grievance and supply a written decision to the inmate within five days; in that response the Grievance Officer or Supervisor was required either to offer to resolve the grievance informally or to deny the grievance or to find that it is not grievable. (Id. ¶ 5 & Ex. 1 at 9).

The informal-resolution decision form sent to the inmate asked whether he wished to appeal the decision, and he was given five days to respond. (Id.). If he indicated on the response form that he wanted to pursue the grievance further, he was provided a formal hearing. (Johnson Decl. ¶ 6 & Ex. 1 at 10). Moreover, if he did not hear from the Grievance Supervisor or Officer within the required five days after submitting his grievance, he was also free to request such a hearing. (Id. Ex. 1 at 9). The hearing was to be held, and a decision rendered, within three days of the prisoner's request for such a hearing. (Id. ¶ 6 & Ex. 1 at 9-10). At the hearing the prisoner was present, along with the Grievance Supervisor, the Grievance Officer and the Inmate Grievance Clerk. (Johnson Decl. ¶ 6). Following the hearing, the IGRC was required to issue a formal recommended decision within two days, and the form that conveyed that decision also asked the inmate whether he wished to appeal to the facility Warden, a decision that the

15

prisoner had to make within five days. (Id. ¶ 6 & Ex. 1 at 10). If he chose to appeal, the IGRP forwarded the paperwork to the Warden, who was required to issue his own decision within five days. (Id. ¶ 7 & Ex. 1 at 11).

Should the Warden deny the grievance, the prisoner could appeal within five days to the Central Office Review Committee ("CORC"). (Id. ¶¶ 7-8 & Ex. 1 at 12). During the relevant time period, the CORC consisted of the Commanding Officer of the DOC Office of Policy and Compliance, the Chief of Facility Operations, the Chief of Custody Management and Environmental Health, the General Counsel of DOC and the Deputy Commissioner for Programs and Discharge Planning, or their designees. (Johnson Decl. ¶ 8). The CORC decision was to be made within ten days and was incorporated in a form that asked the prisoner whether he wished to appeal from that decision. (Id. ¶ 8 & Ex. 1 at 12-13).

The final appeal during the relevant period was to the Board of Correction. (Id. ¶ 9 & Ex. 1 at 13-14). If such an appeal was filed -- with the deadline again being five days -- the Executive Director of the IGRP would provide all relevant materials to the Board. The Board would then be required to issue a recommended decision within twenty days, which was transmitted to the DOC

16

Commissioner. (Id.). The IGRP staff would also send a copy to the prisoner. (Id.). The Commissioner in turn was required to issue a final decision within twenty days (Id.).

The IGRP rules also incorporated a number of "Procedural Safeguards". (Id. ¶ 9 & Ex. 1 at 14-15). Thus they stated, with regard to the specified deadlines, that the IGRC or Warden could request an extension but none would be permitted without the consent of the prisoner. (Id. ¶ 9 & Ex. 1 at 15). It further provided that "[g]rievances not decided within the time limitations may be appealed to the next step, if no extension has been granted." (Id.).

## 2. Assessment of the Exhaustion Record

According to Ms. Kimberley Johnson, the IGRP Field Investigator, copies of all materials generated by an inmate grievance are placed in the prisoner's individual grievance file. (Id. ¶ 11). In September 2010 she reviewed plaintiff's file for all grievances that he had submitted while housed at OBCC and NIC

17

between August 2009 and April 2010. (Id. ¶ 12).[6] During that period
he had filed five grievances while at OBCC and three while at the
NIC. (Id.). He had also filed three complaints that IGRP deemed
non-grievable. (Id. ¶¶ 11-12).[7] Of the eight grievances, he had
accepted the initial, informal resolutions offered by the IGRP
staff for seven of them, and there was no indication that he had
ever filed an appeal from any of the eight decisions. (Id. ¶¶ 12-13
& Ex. B).


Of the eight grievances that Ms. Johnson found in plaintiff's
file, none related to the toilet and shower complaints that he airs
in this litigation. (Id. ¶ 14). Rather, they concerned such matters
as plaintiff's demands for a cane and diabetic sugar, for access to
the law library and to its copying equipment, for copies of phone
records, for correction of his commissary account, for
reimbursement of postal charges, for access to working typewriters,
for return of certain of his properties, for pain medication and

---

[6] This is the period of time corresponding to the incidents
about which plaintiff now complains. (See Am. Compl. ¶ II(C)).

[7] There is no dispute that plaintiff's plumbing complaints
were grievable. (See Johnson Decl. ¶ 3 & Ex. 1 at 2-3).

use of an "IMA", and for a copy of a so-called "730 evaluation order".[8] (Id. Ex. B).

In further documentation of plaintiff's failure to exhaust his grievance remedies on his current claims, defendants proffer the declaration of Mr. Joel Duverge, the DOC Director of Constituent Services. He is charged with "overseeing all matters pertaining to DOC constituent services, which includes responding to complaints concerning DOC facilities that are registered via, *inter alia*, calls to 311, correspondence, or communications from inmates, inmate family and friends, elected officials, the mayor's office, or inmates' attorneys". (Duverge Decl. ¶ 1). The Commissioner's office maintains records of all communications from inmates, and Mr. Duverge searched them for any contact by plaintiff. (Id. ¶¶ 3, 6). Even though plaintiff claimed that he had repeatedly written to the DOC Commissioner about some of his complaints (see, e.g., Pl. Dep. at 24-29, 41-43), Mr. Duverge reports that the Commissioner never received any communication from plaintiff. (Duverge Decl. ¶ 7).

---

[8] We understand this term to refer to a competency evaluation order under N.Y. Crim. Proc. L. § 730.

19

Finally, defendants invoke plaintiff's own deposition testimony, in which he appears implicitly to admit that he did not comply with all of the specific requirements of the IGRP. (Defs.' Mem. of Law 8-9). Rather, he testified that he had complained in a variety of ways to a variety of DOC and non-DOC officials, as well as to corrections officers, concerning plumbing problems at OBCC and the NIC. (Pl. Dep. at 18-24, 38).[9]

In opposing this aspect of defendants' motion, plaintiff contends in general terms that he has administratively exhausted his claims. (Pl. Dep. at 38; Pl.'s 56.1 Statement ¶¶ 16-29; Pl. Mem. of Law 10). In doing so he offers his own assertions that "[p]laintiff has filed grievances about the conditions named in the complaint, and appealed the non-response(s), decisions of the IGRP, Warden(s), C.O.R.C., Board of Corrections, all to no avail," (Pl.'s Mem. of Law 10), as well an affidavit purportedly from a fellow inmate, who states, in equally general terms, that he observed plaintiff filing complaints and an appeal. (Ex. B to Pl.'s Mot. for Summ. J. (Decl. of Jose Morales)). Finally, plaintiff proffers two documents that purport to be grievance forms, one of which appears

---

[9] As noted, plaintiff was not shy about filing initial grievance forms while at OBCC and the NIC. (See Johnson Decl. ¶¶ 12-14 & Ex. B).

to refer to the incident in which plaintiff allegedly stubbed his
toe in the OBCC shower. (Exs. A-B to Pl.'s Affirm in Opp.).

The proffer by defendants certainly satisfies their initial
Rule 56 burden. In the absence of any documentation of relevant
grievances in the files of the pertinent DOC offices, as well as
plaintiff's seeming concession at deposition that he had chosen
alternative routes to express his concerns, it is apparent that,
unlike in other instances, he did not administratively pursue his
current complaints in a manner consistent with regulatory
requirements.

Insofar as plaintiff seeks to rebut this assertion and place
the question of compliance in triable dispute, his showing fails.
First, his own account in his motion papers is conclusory and
unspecific. He merely asserts in generic terms that he exhausted
his remedies, but he fails to address the specific procedural
requirements that he was compelled to satisfy if he wished to
comply with the IGRP rules. (See, e.g., Pl. Dep. at 38 ("I filed
grievances, like I told you, I filed them with outside agencies
affiliated with New York City Department of Corrections and the
City of New York."); Pl.'s Opp. Mem. of Law 5 ("Plaintiff has been
to file all grievances, appeals as stipulated by the NYC DOC

regulations, rules and guidelines.")). Such conclusory assertions by him cannot defeat summary judgment. See generally Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) ("[C]onclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion.") (citing Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002)) (internal quotations omitted). His proffer of the declaration of Mr. Morales is equally unhelpful since it is devoid of specifics, including whether the declarant observed plaintiff filing grievances on the specific topics relevant to this lawsuit and whether he observed plaintiff filing appeals through the four subsequent steps mandated by DOC. (See Morales Decl.).

As for plaintiff's proffer of copies of two grievances, that too does not rescue his case. First, early in 2013 defendants sought, as part of their Rule 34 request to plaintiff, that he produce documents relating to any grievances that he had pursued for the claims asserted in this case, and he never provided any. (Mbaye Decl. ¶¶ 4-5). Instead, he waited until the summary-judgement stage and then proffered the two cited documents. That failing alone could arguably suffice to preclude his post-discovery reliance on documents that he withheld during the discovery period. See, e.g., Kim v. Kum Gang, 2014 WL 2081775, at *3 (S.D.N.Y. May 12, 2014)(documents produced after discovery precluded from use at

22

trial); see also Mikulec v. Town of Cheektowaga, 2014 WL 3973903, at *4 (W.D.N.Y. Aug. 14, 2014).[10]

Second, and more significantly, neither of the two "grievance" documents that he proffers raises the claims he makes here. One is completely unrelated to the claims here and hence does not reflect anything about plaintiff's compliance or non-compliance with IGRP rules in this instance. (Ex. B to Pl.'s Opp. Decl.). As for the other document, although it recounts the fact that plaintiff stubbed his toe in the shower while attempting to push water out of the shower stall, plaintiff does not appear to be complaining -- as

_____

[10] We recognize the plaintiff is a pro se litigant, but he is experienced in this respect, see, e.g., D'Attore v. New York City, No. 10 Civ. 815 (S.D.N.Y. filed Feb. 3, 2010); D'Attore v. Otis Bantum Corr. Center, No. 10 Civ. 1782 (S.D.N.Y. filed Mar. 5, 2010); D'Attore v. City of New York, 2013 WL 1180395 (S.D.N.Y. March 15, 2013); D'Attore v. Cucharella, 2014 WL 4199237 (N.D.N.Y. Aug. 22, 2014), and has shown himself capable of aggressively litigating his cases when he chooses to do so. Moreover, although he has occasionally complained of disruptions in his access to his legal papers, occasioned by his being moved between the State and City prison systems (see, e.g., Pl.'s Decl. in Supp. of Summ. J. ¶ 6), he has been regularly able to utilize and create documents when it has served his purposes to do so. Indeed, on the current motions, he proffered two purported grievances, although, for reasons noted, see infra p. 23, they do not support his contention that he exhausted the current claims. Moreover, his only reference on the current motion to a lack of access to his legal papers concerns his transfer from State prison to Rikers Island (see Pl.'s Decl. in Supp. of Summ. J. ¶ 6), but that took place long after the end of the discovery period. See, e.g., D'Attore, 2014 WL 4199237, at *1.

23

he does in this lawsuit -- about backed-up sewage or the purported failure of staff to fix the plumbing or tile. Indeed, he does not even mention sewage or any failure by jail staff to repair the shower stall in his alleged grievance, which is focused solely on his follow-up medical treatment for his toe injury. (Id. Ex. A). This alone precludes use of these grievances to satisfy the exhaustion requirement. See, e.g., Rose v. Masiey, 2013 WL 4049512, at *7 (S.D.N.Y. July 16, 2013).

Third, plaintiff's evidentiary proffer fails to address the requirement that if a grievance is not upheld, the prisoner must pursue four levels of appeal before turning to the court. He offers no documentation of any effort on his part to comply with that requirement, and does not even address it in any specificity in his motion papers.

In sum, plaintiff fails to demonstrate that there is a genuine triable dispute of material fact as to whether he complied with the five-stage process of administrative review mandated by the IGRC rules and thus, by extension, by the PLRA. Absent such a triable

issue, plaintiff's claims must be rejected for failure to satisfy 42 U.S.C. § 1997e(a).[11]

C. The Merits

Because it is evident that plaintiff has not satisfied the statutory exhaustion requirement, we address defendants' alternative grounds for summary judgment only briefly. We conclude that their motion is merited on substantive grounds as well.

Plaintiff complains about the state of plumbing to which he was allegedly periodically exposed. (E.g., 2d Am. Compl. ¶ 19). Since plaintiff was apparently a pretrial detainee at the time (Pl. Dep. at 17; 2d Am. Compl. § II(D)), those claims must be judged under the Due Process Clause of the Fourteenth Amendment rather

_____

[11] Plaintiff makes no attempt to invoke any of the recognized exceptions to the exhaustion requirement, see supra p. 13, and therefore has waived those arguments. See, e.g., Reynoso v. Swezey, 238 F. App'x 660, 662 (2d Cir. 2007). In any event, as is evident from plaintiff's extended record of filing grievances at OBCC and the NIC and receiving timely and positive responses at the first stage, the grievance procedures were available to him. (See Johnson Decl. ¶¶ 12-13). Defendants have also plainly not waived the exhaustion defense or acted in a manner that would estop them from asserting that defense. Finally, plaintiff had extensive experience with the grievance system at Rikers Island and could not plausibly assert that he was confused as to what the IGRP rules required. (See id.).

than the Eight Amendment, which applies to comparable claims by convicted prisoners. See, e.g., Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979); Caiozzo v. Koreman, 581 F.3d 63, 69-72 (2d Cir. 2009); see also Benjamin v. Fraser, 343 F.3d 35, 49-50 (2d Cir. 2003). Courts adjudicating such due-process claims by pretrial detainees nonetheless apply a set standards comparable to those embodied in caselaw under the Eighth Amendment, that is, deliberate indifference to serious threats to the prisoner's health and safety, a mode of analysis outlined by the Supreme Court in its seminal decision in Farmer v. Brennan, 511 U.S. 825 (1994). See, e.g., Caiozzo, 581 F.3d at 69-72; Pagan v. Westchester Cnty., 2014 WL 982876, at *16 (S.D.N.Y. March 12, 2014).

To establish a "conditions of confinement" claim, the plaintiff must demonstrate that a defendant was deliberately indifferent to a substantial risk of serious harm to him. See, e.g., Brennan, 511 U.S. at 828; Salahuddin v. Goord, 467 F.3d 263, 281 (2d Cir. 2006); see also Helling v. McKinney, 509 U.S. 25, 35-36 (1993). This test thus requires proof of two elements. First, plaintiff must show that he suffered a "serious deprivation of basic human needs," such as "essential food, medical care, or sanitation." Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981). Otherwise stated, "objectively, the deprivation the inmate suffered

26

[must have been] 'sufficiently serious that he was denied the minimal civilized measure of life's necessities'". Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013)(quoting Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001)). Second, he must establish that a defendant acted "with a sufficiently culpable state of mind", id., that is, that he was at least aware of those adverse conditions and, as a subjective matter, was deliberately indifferent to them, a standard "lying somewhere between the poles of negligence at one end and purpose or knowledge at the other." Caiozzo, 581 F.3d at 69 (quoting Brennan, 511 U.S. at 836). Plaintiff fails to satisfy this test.

In regard to toilets, Mr. D'Attore testified that there were seven inmates per toilet in his NIC dorm 2B, and that it was "rare" that all three toilets and two urinals in that NIC dorm were functioning at the same time. (Pl. Dep. at 39). According to plaintiff, when some of these facilities were out of order, because of crowded conditions he sometimes had to wait some unspecified amount of time, leaving him in discomfort or in pain. (Id. at 10, 16-17; Pl.'s 56.1 Statement ¶ 5). As for the showers in plaintiff's housing area in OBCC, he recounted that only one shower stall had broken tiles and that it was backed up by sewage on at least one occasion. (Pl. Dep. at 33). According to Mr. D'Attore, the shower

stall next to it had a clogged drain and was not in use, but there were three or four other shower stalls in that housing area and they had no drainage or other problems most of the time. (Id. at 31).

As for the named defendants' asserted deliberate indifference, plaintiff testified that he had told Warden Mirabel about the problem with some of the toilets at the NIC, and that she had asked him to point out the specific conditions and then told him that she would look into the situation. (Id. at 24, 44). He also reported having told Warden Quinones of the same situation at the OBCC, and asserted that the Warden had responded that he "would look into" the problem. (Id. at 21-22). As for the shower conditions in OBCC, plaintiff testified that he had conveyed his concerns to Officer Mitchell on several occasions, referring to both showers and toilets. (Id. at 19-20). According to plaintiff, Mitchell reported to him that he had entered the complaint in the pertinent logbook and informed the captain and other superiors about the issue. (Id. at 20, 36). Finally, plaintiff asserted that he had told Officer Leon about the bathroom problems, and that she gave him a harsh look, walked away from him and avoided him on subsequent occasions. (Id. at 43-44). Despite his suggestion that these individuals ignored his complaints, he admitted seeing repair work being

28

performed on shower drains on at least one or two occasions and mentioned that the workmen had explained that periodic problems with the plumbing were unavoidable due to the age of the system. (Id. at 32, 47-48).

The deprivation of access to bathroom facilities may constitute denial of minimal acceptable prison conditions if it occurs for a very extended period of time or results in predictably "serious physical harm". See, e.g., Hart v. City of New York, 2013 WL 6139648, at *7-8 (S.D.N.Y. Nov. 18, 2013)(denying summary judgment based on allegations that arrestee was denied access by police for ten to twelve hours despite pre-existing condition of frequent urination, with result that he urinated on himself). See also Odom v. Keane, 1997 WL 576088, at *5 (S.D.N.Y. Sept. 15, 1997)("[R]easonably adequate sanitation and the ability to dispose of one's bodily wastes without unreasonably risking contamination are basic identifiable human needs of a prisoner."). Nonetheless, in ordinary circumstances a "temporary deprivation of the right to use the toilet, in the absence of serious physical harm or a serious risk of contamination simply does not rise to the level of an Eighth [or Fourteenth] Amendment violation." Whitted v. Lazerson, 1998 WL 259929, *2 (S.D.N.Y. May 21, 1998).

29

Plaintiff never specified the extent of his waits for a toilet, thus precluding him from carrying his burden under the prevailing caselaw.[12] In any event, the courts have consistently rejected constitutional claims for denial of access to toilets for periods well in excess of whatever wait is conceivable given plaintiff's report that there were seven prisoners per toilet, even accounting for periodically non-functioning toilets. See, e.g., Cooper v. Marrero, 2013 WL 2529723, at *1, 4-5 (S.D.N.Y. June 11, 2013)(delays of up to 55 minutes with resultant pain, and plaintiff urinating on himself because of medical condition); Dilworth v. Goldberg, 914 F. Supp. 2d 413, 469 (S.D.N.Y. 2012)(alleging denied use of toilet for unspecified periods; plaintiff urinated on himself and was denied permission to change soiled uniform); Walker v. Dep't of Corr., 2012 WL 527210, at *102 (S.D.N.Y. Feb. 14, 2012)(80 minutes); Jones v. Marshall, 2010 WL 234990, at *3 (S.D.N.Y. Jan. 19, 2010)(90 minutes); Gill v. Riddick, 2005 WL 755745, at *16 (N.D.N.Y. March 31, 2005)(70 minutes); Bourdon v. Roney, 2003 WL 21058177, at *10-11 (N.D.N.Y. March 6, 2003)(three hours); Whittead, 1998 WL 259929, at *2 (90 minutes, and prisoner urinated and defecated on himself); see also Mateo v. Alexander,

---

[12] Defendants explicitly noted this oversight on their motion and plaintiff never sought to fill in this evidentiary gap. (See Defs.' 56.1 Statement ¶ 5).

30

2012 WL 864805, at *5 (S.D.N.Y. March 14, 2012)(denials of bathroom on two occasions for up to one hour); Odom, 1997 WL 576088, at *4-5 (toilet did not flush for ten hours each night over a period of months).

For plaintiff to carry his burden, he must show that the condition either inflicted serious harm or posed an unreasonable risk of serious harm. See, e.g., Florio v. Canty, 954 F. Supp. 2d 227, 233-34 (S.D.N.Y. 2013)(citing cases). The apparently modest delays that plaintiff appears to have encountered at times in obtaining access to toilets do not meet that standard. Plaintiff offers no competent evidence that the delays he complains of caused him serious injury or that they posed a substantial risk of doing so. See, e.g., Mabry v. Hester, 2014 WL 1848739, at *3 (S.D.N.Y. May 8, 2014)(plaintiff failed to show causal link between toxins and aggravated medical conditions; conclusory assertions insufficient); Cooper, 2013 WL 2529723 at *4 (delays in using toilet caused intense pain on several occasions due to intensified need to urinate; claim fails as plaintiff offered no evidence that he suffered "any serious physical harm").[13]

---

[13] Plaintiff speculated in his deposition that delays in urinating caused or exacerbated urinary tract infections. (Pl. Dep. at 16-18, 31, 55). On the current motions, he proffers some of his medical records, which reflect treatment for a variety of

Plaintiff's complaint about the showers in OBCC is similarly unsupported.[14] He refers to one shower stall in which water pooled on the floor -- but which he reported was not in use -- and one in which, at one point, he encountered backed-up sewage and a broken tile, causing a lost toenail. (Pl. Dep. at 31-55). In view of (1) the fact that there were concededly at least three or four other available shower stalls that did not have these problems, (2) the apparent fact that plaintiff's encounter with the broken tile and consequent torn toenail was a one-time event, (3) the minor nature of the injury, and (4) the lack of evidence that the presence of backed-up sewage in one shower stall caused or threatened him with serious harm, he fails to demonstrate a basis for a trier of fact

---

conditions but not urinary infections. (Ex. E to Pl.'s Mot. for Summ J.; Ex. D to Pl.'s Opp.). Despite his assertion that he did suffer such infections and his speculation that delays in urinating contributed to that condition, he offers no competent evidence that he suffered from such infections, much less that the occasional wait for a toilet caused or exacerbated any such condition. Finally, he cannot demonstrate that any possibly related condition was of such seriousness that a modest delay in accessing a toilet poses a constitutional problem. Indeed, at one point he also offered his lay opinion that his diet also produced the urinary condition. (Pl. Dep. at 55).

[14] We note that during plaintiff's deposition he seemed to expand on his allegations, suggesting, albeit in the vaguest of terms, that he had encountered toilet and shower plumbing issues in both the OBCC and the NIC facilities. (Pl. Dep. at 40, 47-48). Since, however, he is specific only with respect to the toilets at NIC and the shower stalls at OBCC, we address his claims in those terms.

to find that he was exposed to conditions that caused or were likely to cause him serious injury. See, e.g., Mena v. City of New York, 2014 WL 2968513, at *10 (S.D.N.Y. June 27, 2014)(placement in cell for ten hours "with a large pool of urine on the floor" does not amount to due-process violation; "chronic exposure to human waste will give rise to a colorable claim" but "where exposure to such waste is intermittent or limited to a matter of hours, courts normally will not entertain such actions. 'The Eighth Amendment is generally not violated . . . where unsanitary conditions are temporary.'" (quoting Ortiz v. Dep't of Corr., 2011 WL 2638137, at *6, 7, 9 (S.D.N.Y. April 29, 2011), adopted, 2011 WL 2638140 (S.D.N.Y. July 5, 2011)); Florio, 954 F. Supp. 2d at 234 (same); Solomon v. Nassau Cnty., 759 F. Supp.2d 251, 258 (E.D.N.Y. 2011)("conditions that are temporary or occasional . . . have been found not to constitute a sufficiently serious deprivation to sustain a Section 1983 deliberate indifference claim")(citing cases); Sylla v. City of New York, 2005 WL 3336460, at *1, 3 (E.D.N.Y. Dec. 8, 2005)(requirement that plaintiff use flooded bathroom, with consequent fall and alleged "severe spine, back, neck and cervical collar injuries" does not constitute "excessively serious risk" for Eighth Amendment claim)(citing cases).

33

In sum, plaintiff's claims about the toilets in NIC and the showers in the OBCC are not sustainable under the Due Process Clause since a trier of fact could not reasonably find that they posed a substantial risk of serious harm to plaintiff or caused him such harm. Accordingly, his proffer cannot save those claims from defendants' application for summary judgment. Under these circumstances, we need not also address the possible inadequacy of his showing that any of the defendants were deliberately indifferent to his complaints about these conditions.

## II. Plaintiff's Motion

Plaintiff has also moved for summary judgment. He argues at one point that he has exhausted his grievance remedies and shown by his evidentiary proffer that he was subjected to conditions so offensive as to amount to a violation of his constitutional rights. (Pl.'s Mem. of Law 9-11, 14-26). He further asserts, in vague terms, that defendants have not provided necessary discovery and that consequently the court should enter a default judgment against them. (Id. at 12-14).

Plaintiff's complaint about discovery, deemed for present purposes to be an application under Rule 56(d) as well as a request

34

for entry of a default, is so vague and conclusory as to make it impossible to determine what shortfalls he is complaining about in defendants' performance. During discovery he never pursued a meritorious Rule 37 challenge, and the current record reflects that defendants have properly met their discovery obligations.

As for plaintiff's effort to achieve judgment in his favor on the merits, for reasons already noted that effort must fail. Summary judgment is appropriate for defendants, and hence plaintiff's mirror-image application must be denied.

## CONCLUSION

For the reasons stated, we recommend that defendants' motion for summary judgment be granted and plaintiff's motion be denied.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Jed S. Rakoff, Room 1340, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York

35

10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e), Thomas v. Arn, 474 U.S. 140, 150-52 (1985); Small v. Sec. of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).


**DATED:**     **New York, New York**
              **September 24, 2014**


                              **RESPECTFULLY SUBMITTED,**


                              **MICHAEL H. DOLINGER**
                              **UNITED STATES MAGISTRATE JUDGE**

36

Copies of the foregoing Report and Recommendation have been sent this date to:

Lesley Mbaye, Esq.
Assistant Corporation Counsel
 for the City of New York
100 Church Street
New York, NY 10007

Mr. Gaetano D'Attore
DIN # 10-A-5728
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582-4000